## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MEGEN DUFFY,                                    )
                                                )
              Relator/Plaintiff,                )
                                                )
v.                                              )        Case No. 2:14-cv-2256-SAC-TJJ
                                                )
LAWRENCE MEMORIAL HOSPITAL,                     )
                                                )
              Defendant.                        )

## MEMORANDUM AND ORDER

This matter is before the Court on Relator/Plaintiff[1] Megen Duffy's Motion to Compel

Regarding Defendant's Responses and Objections to Qui Tam Plaintiff's Third Request for

Production of Documents to Defendant (ECF No. 136).  Pursuant to Federal Rule of Civil

Procedure 37 and D. Kan. Rules 37.1 and 37.2, Plaintiff asks the Court to overrule objections

and order Defendant Lawrence Memorial Hospital to produce documents responsive to Qui Tam

Plaintiff's Third Request for Production of Documents to Defendant/Counter Claimant.

Defendant opposes the motion.  As set forth below, Plaintiff's motion is granted in part and

denied in part.

## I.    Relevant Background

Plaintiff served her third document requests on December 9, 2016, and Defendant

responded with objections—and no responsive documents—on January 6, 2017.  On January 20,

2017, Plaintiff provided a written explanation to Defendant of the asserted impropriety of

Defendant's objections.  Counsel subsequently addressed the issues in two telephone

conferences, and on February 8, 2017, Defendant's counsel sent Plaintiff's counsel an email with

---

[1] Because the United States declined to intervene in this qui tam action, the Court will refer to
Relator as Plaintiff.

1

its final position.  Defendant agreed to supplement its response to one of the requests, but four

requests remain at issue.  Given the parties' ongoing discussions, Plaintiff requested and the

Court granted her a four-day extension of time to file a motion to compel.[2]  Plaintiff timely filed

the instant motion.  Based on the parties' efforts, the Court finds they have complied with the

requirements of D. Kan. Rule 37.2.

Plaintiff requests in her motion that the Court overrule Defendant's objections and order

Defendant to produce documents responsive to four requests for production.  Throughout

counsel's written exchanges concerning these particular discovery requests, Defendant has not

withdrawn any of its objections.  Accordingly, the Court has examined those objections and

Plaintiff's responses thereto.  The Court is now prepared to rule on the disputes at issue in

Plaintiff's motion to compel.

## II.      Summary of the Parties' Arguments

Plaintiff brings this qui tam action under the False Claims Act ("FCA"), 31 U.S.C. §

3729 *et seq.*, against her former employer, Lawrence Memorial Hospital ("LMH"), alleging in

part that LMH submitted false information to the federal government in order to maximize

reimbursement from federal medical care programs.  As required by the FCA, Plaintiff served a

"copy of the complaint and written disclosure of substantially all material evidence and

information" she possessed on the United States Attorney for the District of Kansas to permit the

government an opportunity to elect to intervene in the action.[3]  After the government elected not

to prosecute the action,[4] Plaintiff's Second Amended Complaint was unsealed and Plaintiff

---

[2] *See* ECF Nos. 131, 132.

[3] 31 U.S.C. § 3730(b)(2).

[4] *See* ECF Nos. 10, 20.

served LMH.  Defendant answered the Second Amended Complaint and asserted counterclaims against Plaintiff for breach of contract and fraud.[5]

### III.     Whether the Discovery Sought is Relevant and Discoverable

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery and provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[6]

Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[7] Information still "need not be admissible in evidence to be discoverable."[8]  When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of

---

[5] ECF No. 26.

[6] Fed. R. Civ. P. 26(b)(1).

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[8] Fed. R. Civ. P. 26(b)(1).

broad disclosure.[9]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[10]  Relevancy determinations are generally made on a case-by-case basis.[11]

In this action, the Court finds that the relevancy of the discovery called for by Plaintiff's third request for production of documents is apparent on its face.[12]  The requests directly relate to the claims Plaintiff asserts (indeed, with a verbatim statutory reference in one instance) or to the defenses raised by Defendant.  The Court discusses below Defendant's other objections, but with respect to relevancy the Court overrules Defendant's objection.[13]

Neither does the Court find support for Defendant's ubiquitous comment that Plaintiff is using every discovery request as a "roving commission" to investigate broad-brush allegations of fraud which are unsupported by any actual knowledge of Plaintiff.  Along with the comment, Defendant repeats its earlier statements about Plaintiff's theory of liability being a moving target and a fishing expedition.  The Court has previously addressed that argument, and need not repeat

---

[9] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[10] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] Defendant does not raise a relevance objection with respect to RFP No. 60.  *See* ECF No. 136-1 at 3-4.

[13] Defendant seeks to incorporate in its response the arguments it asserted in earlier briefs based on *Koch v. Koch Industries, Inc.*, 203 F.3d 1202 (10th Cir. 2000).  *See* ECF No. 146 at 3 n.1. The Court has thoroughly addressed the arguments in its Memoranda and Orders dated December 21, 2016 (ECF No. 118) and February 7, 2017 (ECF No. 133).

itself.[14]  And as the Court previously noted, Defendant's argument distracts from the issue at hand, i.e. whether the discovery requested is relevant and discoverable.

## IV.  Defendant's Common and Boilerplate Objections

Before considering the individual requests and objections, the Court notes that Defendant has again asserted the boilerplate objection that the requests are unduly burdensome.  This objection is not accompanied by facts justifying the objection or setting forth an assessment of the costs in time and/or money Defendant would incur if it produced the requested discovery.  Instead, Defendant includes in its response to RFP No. 60 the vague statement that it "has already incurred significant time and expense in obtaining and producing its annual Cost Reports which Plaintiff possesses."[15]  No other response contains a reference to any time or expense Defendant has expended.  To the extent the boilerplate objection lacks specificity, Defendant has not met its burden to show how the discovery requests are unduly burdensome.[16]  The discovery requests at issue relate to Plaintiff's claims or Defendant's defenses, are relevant on their face, and are not unduly burdensome.

## V.  Specific Discovery Requests

The Court considers the specific discovery requests and any objections not previously addressed.

### A.  RFP No. 59

---

[14] *See* ECF No. 133 at 7-8.

[15] ECF No. 136-1 at 4.

[16] *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. March 30, 2005).

In RFP No. 59, Plaintiff seeks "[a]ll documents reflecting the base Diagnosis-Related Group ("DRG") payments received from CMS by Defendant for fiscal years 2010 through the present."[17]  As Plaintiff explains, the request stems from the statute governing Hospital Value Based Purchasing ("HVBP") payments, which are funded through adjustments of hospitals' DRG payments. A hospital that meets the HVBP performance standards receives an increase in the base operating DRG payment (Medicare reimbursement) amount for each discharge.  If Defendant knowingly manipulated arrival times, as Plaintiff alleges, that would have affected Defendant's performance scores and DRG payment amounts.[18]  Plaintiff contends that because Defendant bills CMS for each discharge, each billing results in a discrete false claim for payment or reimbursement.

Defendant argues it has already produced this information in the form of Medicare Cost Reports, and attaches a copy of the document it produced.[19]  The document contains two lump sums which reflect "DRG amounts other than outlier payments for discharges"—one for the period January 1 to September 30, 2013, and the other for October 1 to December 31, 2013— which the Court does not construe as responsive to RFP No. 59.  As Plaintiff explains, Medicare Cost Reports are summaries of cumulative total payments made by CMS.  The Reports do not contain the actual payment records, amounts, number of DRG payments in the reported period, or frequency of the DRG payments.  As such, Defendant has not provided the information sought by RFP No. 59.  The Hospital Value Based Purchasing statute, which is fundamental to one of

---

[17] ECF No. 136-1 at 1.

[18] *See* 42 U.S.C. § 1395ww(o)(6), (7).

[19] *See* ECF No. 146-1 at 1.

Plaintiff's claims, provides the structure for the request. The Court rejects Defendant's objections that the request is overly broad or disproportional to the needs of the case.

Plaintiff asks Defendant to produce documents responsive to RFP No. 59 for fiscal years 2010 through the present. However, the HVBP program began with discharges occurring on or after October 1, 2012.[20] Plaintiff offers no compelling reason why Defendant should be required to produce documents before that date. The Court overrules Defendant's objections and grants Plaintiff's motion with respect to RFP No. 59, but modifies the request such that Defendant shall produce responsive documents from October 1, 2012 to the present.

### B.    RFP No. 60

RFP No. 60 seeks "[a]ll documents reflecting amounts Defendant was reimbursed pursuant to the Hospital Value Based Purchasing program for fiscal years 2010 through the present."[21] Defendant raises a number of objections, including that the request is duplicative of RFP Nos. 24 to 26, contained in Plaintiff's First Request for Production of Documents. Plaintiff did not challenge Defendants' responses to those requests in the motion to compel she filed in connection with that discovery request,[22] and Defendant argues she has thus waived her right to do so. As Plaintiff points out, RFP No. 24 was limited to documents indicating the frequency of HVBP payments, while RFP No. 25 asked for documents indicating adjustments to the Medicare reimbursement rates under HVBP. Plaintiff acknowledges the similarity in the requests between Nos. 26 and 60 but argues RFP No. 60 is broader, as it seeks documentation of all

---

[20] 42 U.S.C. § 1395ww(o)(1)(B).

[21] ECF No. 136-1 at 3.

[22] ECF No. 99 (filed October 7, 2016).

reimbursements Defendant received pursuant to HVBP, while RFP No. 26 was limited to HVBP incentive payments.

The Court finds that RFP No. 60 is duplicative of the requests Plaintiff made and the documents Defendant produced in response to RFP Nos. 24 to 26. Plaintiff concedes that a single set of documentation could be responsive to all of these requests, and argues the narrow point that the requests themselves are not duplicative. While the Court rejects Plaintiff's narrow argument, the Court is persuaded that the objective has been reached if Defendant already produced the documents Plaintiff now seeks to compel. Based on the Court's review of the information contained in the parties' respective briefs and attachments, the Court concludes Defendant either produced documents responsive to RFP No. 60 in its earlier production, or its earlier production was incomplete but Plaintiff failed to raise a timely challenge and has now waived her right to do so. The Court denies Plaintiff's motion with respect to RFP No. 60.

### C.      RFP No. 61

In RFP No. 61, Plaintiff seeks "[a]ll documents reflecting amounts Defendant received from Medicaid, the State of Kansas, or a KanCare contractor for fiscal years 2009 through the present."[23] In addition to arguing against its relevance, Defendant objects that the request is overbroad and disproportionate to the needs of the litigation in that it demands "all documents" without limiting the request to the issues in dispute or what Plaintiff claims was Defendant's fraud. Defendant further argues the request is overbroad and disproportionate because the allegations concerning Medicaid in the Second Amended Complaint are limited to Defendant's alleged noncompliance with the Deficit Reduction Act.

---

[23] ECF No. 136-1 at 4.

In her reply, Plaintiff explains how the Second Amended Complaint lays out the relevant statutory structure and alleges Defendant's conduct did not comply with various provisions, all to the point that reimbursement claims by Defendant constitute False Claims Act violations.  In addition, Plaintiff explains that the Kansas state Medicaid agency is KanCare, Defendant is a provider of Medicaid services in Kansas, Defendant certified to KanCare its compliance with the Deficit Reduction Act, approximately 60% of every dollar Defendants receives from Medicaid is federally funded, and that a "claim" for False Claims Act purposes exists if the federal government provides any portion of the money demanded.[24]  Given the ubiquitous allegations in the Second Amended Complaint concerning Medicaid, as related to payments Defendant received and its attestations of compliance, the Court concludes that RFP No. 61 is not overbroad or disproportionate.

Defendant, who objected to the request and produced no responsive documents, now argues the "request related to Medicaid should be limited to documents reflecting the total annual payments LMH received from Medicaid over the relevant years."[25]  The Court agrees Defendant must produce such documents, but because the Court overrules Defendant's objections and grants Plaintiff's motion with respect to RFP No. 61, Defendant must also produce all other documents responsive to the request.

**D.**      **RFP No. 63**

Finally, in RFP No. 63 Plaintiff seeks "[a]ll completed Health Insurance Claim forms, on CMS form 1500 or its electronic equivalent, submitted to CMS for LMH Emergency Department patients, 18 years and older, presenting with complaints of chest pain or acute myocardial

---

[24] *See* ECF No. 150 at 17-23.

[25] ECF No. 146 at 14.

infarction from October 1, 2010 to the present."  Defendant objects that the request is patently overbroad, unduly burdensome, and disproportional to the needs of the litigation, specifically because Plaintiff has never claimed that Defendant submitted false or fraudulent claim forms, and Defendant would be required to produce every claim form for every single adult potential cardiac or chest-pain patient for whom it submitted a CMS form 1500 over the past six years. Defendant asserts the forms include patients' protected health information.

Plaintiff denies having made a new assertion by arguing that all Medicare claim forms Defendant submitted during the relevant time period constitute false claims.  The Second Amended Complaint sets forth the liability and damages Plaintiff claims under 31 U.S.C. § 3729(a)(1), and Plaintiff contends every false claim submitted to the government for payment is subject to trebling of damages and unique civil penalties.  Plaintiff offers support for her assertion,[26] but whether each billing constitutes a false claim for payment under the False Claims Act is not for this Court to decide in the context of a discovery motion.  Nor does the Court need an answer to that question for purposes of ruling on Defendant's objection.

Defendant contends that RFP No. 63 is not relevant because CMS's Form 1500 has nothing to do with hospital reimbursement or compensation by CMS.  While the Court is not convinced the request is irrelevant, the Court does find it disproportional to the needs of this case.  The Court's understanding is that the Form 1500 is used by physicians and health care suppliers to submit claims for medical services to CMS.[27]  Defendant represents that it employs

---

[26] *See United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719 (N.D. Ill. 2007) (denying remittitur  of civil penalties imposed for each of 18,130 separate false enrollment forms submitted to U.S. for payment).

[27] "Form CMS-1500 At a Glance," published by Department of Health & Human Services, found at https://networkhealth.com/_files/pdf/provider/medicare/cms-1500%20Fact%20Sheet.pdf.

certain doctors and healthcare professionals as contractors, and as part of their contract submits the Form 1500 on their behalf. Accordingly, the forms have no bearing on the hospital's right to compensation from CMS or its reimbursement rates. Plaintiff does not dispute Defendant's representation. Although Defendant does not indicate how many forms might exist over a six-year period for it to locate and produce, the Court accepts that the documents likely have little or marginal importance in resolving the issues in this case, and the burden or expense of the proposed discovery outweighs its likely benefit. The Court denies Plaintiff's motion with respect to RFP No. 63.

## VI.    Plaintiff's Request for Sanctions

Plaintiff urges the Court to grant her motion in toto and award sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(A). Defendant argues its objections do not justify the imposition of sanctions. Because the Court is granting Plaintiff's motion in part and denying it in part, the Court must instead be guided by Fed. R. Civ. P. 37(a)(5)(C), which permits but does not require a court to apportion reasonable expenses for a motion to compel after giving the parties an opportunity to be heard.[28] The Court declines to award expenses related to the instant motion.

**IT IS HEREBY ORDERED** that Relator/Plaintiff Megen Duffy's Motion to Compel Regarding Defendant's Responses and Objections to Qui Tam Plaintiff's Third Request for Production of Documents to Defendant (ECF No. 136) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to Request for Production No. 61. The motion is DENIED insofar as the Court has modified Request for Production No. 59, and DENIED with respect to Request for Production Nos. 60 and 63. Within 14 days of the date of

---

[28] "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

this order, Defendant Lawrence Memorial Hospital shall produce documents responsive to Qui Tam Plaintiff's Third Request for Production of Documents to Defendant consistent with this order.

IT IS SO ORDERED.

Dated this 30th day of March, 2017 at Kansas City, Kansas.


*s/ Teresa J. James*
Teresa J. James
U.S. Magistrate Judge