## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MEGEN DUFFY,                                )
                                            )
       Relator/Plaintiff,              )
                                            )
v.                                          )     Case No. 2:14-cv-2256-SAC-TJJ
                                            )
LAWRENCE MEMORIAL HOSPITAL,                 )
                                            )
       Defendant.                      )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant/Counterclaimant Lawrence Memorial

Hospital's Motion to Modify Discovery Order (Doc. 133) Directing Defendant/Counterclaimant

Lawrence Memorial Hospital to Respond to Document Request Nos. 40, 41, 43 and 58 and for

Protective Order, or, in the Alternative, Motion for Extension of Time to Respond (ECF No.

142).  Pursuant to Federal Rule of Civil Procedure 26(c), Defendant asks the Court to enter a

protective order directing it to produce a random sampling of 252 patient records, along with five

spares, in order to respond to Plaintiff's Document Requests Nos. 40, 41, 43 and 58.  Plaintiff

opposes the motion.  As set forth below, Defendant's motion is granted.

### I.    Relevant Background

In its order dated February 7, 2017, this Court ordered Defendant to produce within 14

days documents responsive to certain of Plaintiff's requests in her Second Request for

Production of Documents.[1]  Plaintiff acknowledges Defendant produced the documents in

question with the exception of those which are the subject of the instant motion, *i.e.* those

responsive to RFP No. 40, 41, 43 and 58.  The relevant requests are as follows:

     REQUEST 40: All records for LMH Emergency Department patients 18 years

---

[1] ECF No. 133.

and older, presenting with complaints of chest pain or acute myocardial infarction from October 1, 2010 to the present, which reflect or indicate the time such patients first had contact with Emergency Department personnel during such visits.

REQUEST 41: All electrocardiogram (ECG or EKG) printouts, strips, and other paper or electronically stored records, for patients 18 years and older presenting in the LMH Emergency Department between October 1, 2010 and the present with complaints of chest pain or acute myocardial infarction, reflecting or indicating the time an electrocardiogram was performed.

REQUEST 43: All nurse notes, cheat sheets, time stamps, and other electronically stored or paper notes or records used by Emergency Department employees to note the time any patient, 18 years or older and presenting to the Emergency Department with complaints of chest pain or acute myocardial infarction, first had contact with Emergency Department personnel during such visits.

REQUEST 58: All Emergency Department logs or other documentation of transfers (as required to be kept by the Emergency Medical Treatment & Labor Act), to or from any other medical facility, of patients presenting to LMH with chest pain or acute myocardial infarction.[2]

As Defendant conducted searches for documents responsive to these requests, it determined that 15,574 unique patient records would have to be located and gathered.[3]  The process would require an individual or individuals to go into Defendant's electronic records system and review every one of the patient charts in those records to respond to the discovery order.  As Defendant explains, the hospital rolls its patients' Emergency Department visit records into their inpatient or observation visits, making it impossible to electronically segregate the Emergency Department portion from the hospital-based portion of any visit.  According to Defendant, during 2016 it released 13,848 patient records (or nearly 2,000 fewer than this production would require) with a staff of three individuals working five days a week.  Mr.

---

[2] *See* ECF No. 116-1 at 2-5, 10.

[3] The data recited in this paragraph and the next comes from the affidavit of Michael Williams, Vice President and Chief Information Officer for Lawrence Memorial Hospital.  *See* ECF No. 143-1.

Williams voices a concern that processing and logging 15,574 patient records in relatively short order would cause significant strain on Defendant's access to and use of its electronic production database, slowing the system and potentially impacting patient care. As a result, Mr. Williams recommends that the search for and production of these patient records be performed outside the hours of 7:00 AM to 5:00 PM Monday through Friday.

In an effort to calculate the time necessary to locate and produce the relevant patient records, Defendant's Medical Records department obtained a sample of ten patient records. They reported that it took up to 20 minutes to process and log a single patient's records to respond to the four requests at issue, and an additional ten minutes to determine if a record contained information relating to a transfer to or from other medical facilities as requested in RFP No. 58. At 30 minutes per record, Defendant estimates it would take 7,787 worker hours to locate and produce responsive information for 15,574 patient records. If Defendant had ten employees working on the task, they would spend more than ninety-seven days working eight hours a day, at an estimated cost to Defendant of $196,933.23.[4]

After aggregating the information, Defendant asserts it would need to redact patients' personal confidential information. According to an affidavit of the Director of Litigation Support at defense counsel's law firm, redaction would take ten reviewers fourteen days at a cost of $37,259.50. The process would include a quality control attorney reviewer who would spend two hours a day, and reviewers who would review 15 documents per hour for eight hours a day.

---

[4] Defendant believes it would pay contract staff approximately $25.29 per hour based on the job grade for that position, which represents a base hourly pay of $16.86, multiplied by one and one-half times for overtime.

In sum, Mr. Williams and Mr. Cole estimate that producing the information relevant to RFP Nos. 40, 41, 43, and 58 would take 8,982 hours of work and cost in excess of $230,000 if done by contract staff.

## II.      Summary of the Parties' Arguments

Given these numbers, Defendant asks the Court to modify its order by limiting the required production to a random sampling of 252 patient records plus five spares.  Defendant contends the sampling would abide by appropriate government standards, minimize the costs of production, yet ensure Plaintiff has sufficient information to litigate her case.  Defendant contends other courts have accepted random sampling as a means of reducing the cost and burden of discovery, and it arrived at a sample size by using a statistical tool known at RAT-STATS used by the Department of Health and Human Services Office of Inspector General.  In the alternative, Defendant seeks additional time in which to comply with the Court's order, and asks the Court to shift some or all of the expense of production to Plaintiff.

Plaintiff opposes the motion on a number of grounds.  First, Plaintiff argues Defendant's motion is not justiciable because Defendant makes no representation that it attempted to confer with Plaintiff's counsel before filing its motion as required by Local Rule 37.2, or alternately because the Court should construe the motion as a baseless motion for reconsideration.  Second, Plaintiff argues that Defendant's motion is untimely because it raises undue burden, an objection the Court rejected in the first instance because Defendant had provided no facts to support it. Plaintiff urges the Court to reject the argument once again to prevent Defendant from benefitting from its own inaction.  Plaintiff seeks to distinguish the cases Defendant relies on to support the adequacy of random sampling in responding to discovery requests, and argues case law reflects a reluctance to shift costs of production.  Finally, Plaintiff contends redaction is unnecessary

because the protective order in this case allows Defendant to designate the patient records as

Confidential Information.

## III.    Analysis

### A.    Propriety of a Protective Order

The Court has carefully considered the affidavits of Messrs. Williams and Cole to

determine whether Defendant has demonstrated good cause pursuant to Fed. R. Civ. P. 26(c)(1)

for an order protecting it from undue burden and expense.  The affidavits, which are unrefuted,

satisfy the Court that Defendant should not be required to comply with the Court's order as it

currently stands.  Had Defendant presented such evidence in response to Plaintiff's Motion to

Compel,[5] the Court may have found the requests at issue unduly burdensome and disproportional

to the needs of the case.  Contrary to Plaintiff's assertion, Defendant did not waive its right to

seek protection once the enormity of the task became apparent.  Nor will the Court find

Defendant's motion is not justiciable because Defendant did not attempt to confer with Plaintiff

before its filing.[6]  The parties conferred following Defendant's objections to the discovery

requests, and that was the point at which some meeting of the minds could have produced a

different response by Defendant or an alteration of the discovery request by Plaintiff.  At this

point, however, Defendant is seeking relief from this Court's order rather than from a party's

discovery request.[7]

---

[5] ECF No. 116.

[6] The Court likewise rejects Plaintiff's suggestion that Defendant's motion seeks reconsideration. Defendant is not asking the Court to change its conclusion that Defendant must produce responsive documents, but is instead seeking an alternative means of complying with the Court's order.

[7] The Court recognizes that Fed. R. Civ. P. 26(c)(1) imposes a requirement that a motion for protective order include a certification that the movant has in good faith conferred or attempted

Granting Defendant's request for a protective order is well within the Court's discretion.

The court has broad discretion "to decide when a protective order is appropriate and what degree

of protection is required."[8]  The Supreme Court has recognized that "[t]he trial court is in the

best position to weigh the fairly competing needs and interests of the parties affected by

discovery. The unique character of the discovery process requires that the trial court have

substantial latitude to fashion protective orders."[9]  Along with these principles, this Court is

mindful of its duty to construe and administer the Federal Rules of Civil Procedure "to secure the

just, speedy, and inexpensive determination of every action and proceeding."[10]  The Court finds

Defendant is entitled to an order permitting it to randomly sample the 15,574 electronic patient

records it has identified as necessary for review to comply with the Court's discovery order.

Defendant's request to comply with the order to produce documents responsive to RFP

Nos. 40, 41, 43 and 58 by producing a random sampling of 252 patient records, along with five

spares, is justified by the time and expense of a full production.  The Court also finds merit in the

method from a standpoint of accuracy.  Plaintiff summarily contends the manner of retrieving

information is a non-factor.  However, if Defendant were to employ contract workers to

---

to confer with the opposing party in an attempt to resolve the issue without court involvement.
In this instance, the Court excuses Defendant's omission of the certification because Plaintiff
could not have given Defendant permission to disobey the Court's order.

[8] *MGP Ingredients, Inc. v. Mars, Inc.,* 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

[9] *Seattle Times,* 467 U.S. at 36.  Defendant cites health care cases from other jurisdictions where random sampling was authorized.  ECF No. 143 at 8-9.  Plaintiff argues no single case is sufficiently analogous to sway the Court and none are applicable.  While the Court finds the cases to be of interest, the Court exercises its discretion under Rule 26 based on the unrefuted evidence Defendant presents and not because of the subject matter of the action.

[10] Fed. R. Civ. P. 1.

manually search for and review the records, and if the individuals were under time constraints to

meet a court deadline, the element of human error would be a realistic factor.

> Overall, the myth that exhaustive manual review is the most effective - and therefore, the most defensible - approach to document review is strongly refuted. Technology-assisted review can (and does) yield more accurate results than exhaustive manual review, with much lower effort. Of course, not all technology-assisted reviews (and not all manual reviews) are created equal. The particular processes found to be superior in this study are both interactive, employing a combination of computer and human input. While these processes require the review of orders of magnitude fewer documents than exhaustive manual review, neither entails the naïve application of technology absent human judgment. Future work may address *which* technology-assisted review process(es) will improve *most* on manual review, not *whether* technology-assisted review *can* improve on manual review.[11]

### B.    The Use of RAT-STATS

The next question is whether Defendant may employ the method it proposes, RAT-

STATS, to select the sample size of 257.  According to Mr. Williams, RAT-STATS is the

primary statistical tool used by the Department of Health and Human Services Office of

Inspector General ("OIG") and offered to providers in their "efforts to fulfill the claims review

requirements for corporate integrity agreements or provider self-disclosure protocol."[12]  This is

consistent with the Court's understanding of RAT-STATS, a statistical package developed,

recommended by, and available free of charge from the OIG website.[13]  The software includes a

---

[11] Maura R. Grossman & Gordon V. Cormack, <u>Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review</u>, 17 Rich. J.L. & Tech. 11, 61 (2011).

[12] ECF No. 143-1 ¶10.

[13]  "RAT-STATS is a free statistical software package that providers can download to assist in a claims review. The package, created by OIG in the late 1970s, is also the primary statistical tool for OIG's Office of Audit Services."  https://oig.hhs.gov/compliance/rat-stats/.  *See also* Cornelia Dorfschmid, "Why OIG RAT-STATS and Sampling are Hot," published in Journal of Health Care Compliance, http://compliance.com/publications/why-rat-stats-and-sampling-are-hot-the-best-strategy-for-health-care-entities-is-one-of-proactive-preparedness/.

Sample Size Determination feature to ensure that a statistically valid sample is drawn, which in turn allows for making a "fair guess" and drawing conclusions from the sample to the universe.[14] Asking the software to produce a confidence level of 99%[15] (the highest level offered by the program) in a universe size of 15,754 records, RAT-STATS identified 252 as an appropriate sample size. Defendant then used the RAT-STATS tool to create 257 (252 sample and five spares) random numbers.

Plaintiff offers no objection to or criticism of RAT-STATS. Instead, Plaintiff contends that allowing Defendant to conduct random sampling is akin to giving her a raffle ticket. She does not explain the analogy, nor is the similarity immediately apparent. Absent a reasoned objection and considering the source and reliability of the statistical tool, the Court is satisfied that the methodology Defendant proposes does not prejudice Plaintiff.

The Court will modify its order (ECF No. 133) to direct Defendant to utilize RAT-STATS and produce a random sampling of 252 patient records, along with five spares, to respond to RFP Nos. 40, 41, 43 and 58.[16] The Court recognizes that further issues could arise following Defendant's production of this limited number of records, but if so counsel may bring any such issues to the Court's attention and they will be addressed in due course.

---

[14] Dorfschmid, *id*.

[15] As Defendant explains through citations to authority, a confidence level of 99% means a less than 1% chance that under- or over-representation of the data in the random sample is attributable to chance. *See, e.g., Little v. Master-Bilt Products, Inc.*, 506 F. Supp. 319, 327 n.7 (N.D. Miss. 1980).

[16] Using Defendant's estimates of time and calculating it will take more than 128 hours for Defendant to produce 257 records (not including review time for redaction purposes), the Court is allowing Defendant six weeks to comply with the Court's modified order. If the Court's calculation is too generous or Defendant is otherwise able to produce the records in less time, it should do so.

## C.     Redaction

Defendant intends to redact personal confidential information from the patient records it produces.  Plaintiff claims no such redaction is necessary because any concerns about confidentiality are addressed by the protective order entered in this case.[17]  While the Court has full confidence in the parties' adherence to the terms of the protective order, the data at issue relates to patients who are not parties to this action and whose personal confidential information Defendant has a legal duty to safeguard.  At this point, the Court directs Defendant to produce records only after redacting patients' personal confidential information.  After reviewing the records, should Plaintiff perceive a compelling need to view the redacted information that outweighs the patients' privacy rights, Plaintiff may raise the issue in an appropriate manner.

**IT IS THEREFORE ORDERED** that Defendant/Counterclaimant Lawrence Memorial Hospital's Motion to Modify Discovery Order (Doc. 133) Directing Defendant/Counterclaimant Lawrence Memorial Hospital to Respond to Document Request Nos. 40, 41, 43 and 58 and for Protective Order, or, in the Alternative, Motion for Extension of Time to Respond (ECF No. 142) is GRANTED.  The Court hereby enters this protective order which modifies that portion of the Court's Memorandum and Order dated February 7, 2017 (ECF No. 133) ordering Defendant Lawrence Memorial Hospital to produce documents responsive to Qui Tam Plaintiff's Second Request for Production of Documents to Defendant Nos. 40, 41, 43 and 58.  No later than 42 days after the date of this order, Defendant shall respond to Qui Tam Plaintiff's Second Request for Production of Documents to Defendant Nos. 40, 41, 43 and 58 by producing a random sampling (utilizing RAT-STATS) of 252 patient records plus five spares, for a total of 257 records.

---

[17] *See* ECF No. 38.

9

IT IS SO ORDERED.

Dated this 31st day of March, 2017 at Kansas City, Kansas.


Teresa J. James
U. S. Magistrate Judge