IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
ex rel. Megen Duffy,

                    Relator-Plaintiff,

vs.                                    Case No. 14-2256-SAC-TJJ

LAWRENCE MEMORIAL HOSPITAL,

                    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff has brought this False Claims Act ("FCA") lawsuit against defendant Lawrence Memorial Hospital ("LMH"). This case is before the court upon LMH's motion for summary judgment (Doc. No. 322) and plaintiff's motions for partial summary judgment (Doc. Nos. 318) and for summary judgment against LMH's counterclaims (Doc. No. 320).

Plaintiff alleges that LMH made two kinds of false statements in this case. First, plaintiff asserts that LMH falsely reported information involving patients' arrival time to the Government to increase Medicare reimbursement. Plaintiff asserts:

> that LMH knowingly manipulated the apparent order of timed patient events in medical records, so as to maximize Medicare reimbursement. In carrying out this scheme, LMH knew that the Specifications Manuals instructed LMH to abstract the earliest event in the medical record as "arrival time." So LMH made sure electrocardiogram ("EKG") times were the earliest times appearing in the records of chest-pain patients. Of course, these patients had necessarily arrived at the

1

hospital well before receiving an EKG.  The proof is in
the proverbial pudding.  LMH began reporting "zero"
minute arrival-to-EKG times in 2011.

Doc. No. 333, p. 1.  Plaintiff claims this misinformation "directly

impacted LMH's Medicare reimbursement rate because of [its] impact

on the Outpatient Quality Reporting ('OQR'), Inpatient Quality

Reporting ('IQR'), and Hospital Value Based Purchasing ('HVBP')

programs."  Id.

Plaintiff's second claim is that LMH knowingly, recklessly

and falsely certified compliance with employee anti-fraud

education requirements set out by Section 6032 of the Deficit

Reduction Act of 2005 ("DRA") as a condition of payment from the

Medicaid program.  Id. at p. 2. Plaintiff seeks partial summary

judgment in her favor on this claim.  Doc. No. 318.

LMH has alleged state law breach of contract and fraudulent

misrepresentation counterclaims against plaintiff.  These claims

arise from a settlement agreement LMH and plaintiff entered which

resolved discrimination claims plaintiff raised in administrative

complaints.  A broadly-stated release was part of the agreement.

The settlement agreement was struck a few months after plaintiff

filed this FCA action under seal.  LMH did not know of the FCA

action at the time of the settlement agreement.  LMH contends that

plaintiff breached the settlement agreement and made fraudulent

misrepresentations which LMH relied upon to enter the settlement

agreement.  Plaintiff asks for summary judgment against the counterclaims.  Doc. No. 320.

As explained below, the court finds that LMH's motion for summary judgment should be granted because plaintiff cannot demonstrate an essential element of her FCA claims, that is the materiality of the alleged false statements made by LMH.  For the same reasons, plaintiff's motion for partial summary judgment should be denied.  With these rulings, the court shall decline to exercise jurisdiction over LMH's counterclaims.  Therefore, plaintiff's motion for summary judgment against the counterclaims is moot.

I. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  A "genuine dispute as to a material fact" is one "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.  At the summary judgment stage, the court's job "is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . If [however] the evidence is merely colorable . . . or is

3

not significantly probative . . . summary judgment may be granted." Id. at 249-50.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). The non-movant may not rely on the party's own pleadings; rather, the non-movant must come forward with facts supported by competent evidence. Id. (interior quotations omitted). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. 251-52.

II. FACTS

The following facts are uncontroverted or construed in the light most favorable to plaintiff. Some additional facts, particularly as to plaintiff's DRA contentions, may be included in the court's later discussion of LMH's arguments.

In November 2013, plaintiff called a Centers for Medicare & Medicaid Services ("CMS") hotline to report LMH for falsifying patient charts and charging Medicare for services LMH was not

4

providing so that LMH would receive increased Medicare reimbursement. Her allegations were investigated by NCI Advance Med, a CMS contractor that investigates fraud allegations. That investigation was closed around July 2014.

Plaintiff filed her initial complaint under seal on May 30, 2014. The U.S. Department of Justice was served with the complaint. The Health and Human Services Office of Inspector General was notified and plaintiff was interviewed by the U.S. Attorney's Office for the District of Kansas. The Department of Justice has declined to intervene in this case. Plaintiff filed an amended complaint on June 16, 2015. DOJ was served with the complaint and again declined to intervene.

A. Arrival time facts

LMH makes daily claims to the Medicare program for interim payment to a Medicare Administrative Contractor. LMH is paid for services to Medicare patients through interim payments received most business days.

The charges LMH submits for payment are based upon LMH's chargemaster which is LMH's official rates for individual procedures, services and goods at the hospital. CMS determines the payment rate for LMH's charges for Medicare patient services prior to the services being delivered. LMH has a contract with CMS to provide services to Medicare patients for the rates determined by CMS.

The payment rate is impacted positively by LMH's participation in reporting programs. The Inpatient Quality Reporting Program ("IQR") is a "pay-for-reporting" program. Under this program, hospitals report certain designated quality measures regarding their inpatient encounters to CMS. The Outpatient Quality Reporting Program ("OQR") is also a "pay-for-reporting" program. Under this program, hospitals report certain designated quality measures regarding their outpatient encounters to CMS. In return for submitting data for these reporting programs, hospitals avoid a reduced payment for the provision of services to Medicare patients.

LMH's Quality Services Department abstracts data from patient charts and submits that data to CMS for IQR and OQR reports. The data abstraction is done using Specifications Manuals promulgated by CMS. Because abstractors do not and cannot alter patient records or even investigate the accuracy of the patient records, inaccuracies in patient records are simply carried over to the abstracted data reported to CMS on IQR and OQR measures.

Each fiscal year from 2011 to 2018, LMH completed Data Accuracy and Completeness Acknowledgements ("DACA" forms) and submitted those certifications to CMS. The DACA forms acknowledge that the information reported for the IQR program is accurate and complete and that the acknowledgement is required for the IQR program.

Each year CMS randomly selects 450 hospitals for each of the IQR and OQR programs to verify the accuracy of the abstraction of data from medical records.  In addition, there are 50 targeted hospitals.  LMH has been randomly selected three times since 2011. LMH satisfied the 75 percent accuracy threshold in these audits. The audits, however, do not assess the accuracy of the medical records themselves.

The HVBP program is a budget-neutral program.  Under the HVBP, CMS withholds a percentage from the total annual Medicare payments to all hospitals nationally, and places it in a separate fund used to increase or decrease the reimbursement rate upon claims for payment in following years, depending upon performance on certain measures calculated with IQR data.

All amounts in the HVBP fund are paid out to hospitals each year.  CMS does not retain any of the money.

"Arrival time" is a component of certain measures in the IQR and OQR programs.  There are numerous other measures which do not use "arrival time" as a component.

Performing an ECG prior to registering a patient results in the "arrival time" reported to CMS being the same as the ECG time in the patient record, where the ECG is the earliest documented event in the medical record.

An expert witness for plaintiff has testified that, based upon his review of documents, LMH failed to properly record the

actual arrival times of ER chest pain patients by delaying registration until after an ECG was obtained. Doc. No. 333-14, p. 3. There is other evidence discussed in the orders denying LMH's first motion for summary judgment and LMH's motion for reconsideration (Doc. No. 204, pp.8-9, 16-19; Doc. No. 234, p. 4 n.2), that LMH knowingly falsified patient records with the intent of causing abstracted "arrival times" to be later than they would have been absent the falsification, thereby improving LMH's reported performance on time measures for the IQR, OQR, and HVBP programs. See also, Doc. No. 333, Statement of Fact # 89 and record citations in support.

From 2010 through 2017 for LMH, the records in which the abstracted "arrival time" of a patient was either the same as or after a recorded EKG time represents 15.89% of the inpatient records submitted to CMS for measures for which "arrival time" was a data point.

From 2010 through 2017 for LMH, the records in which the abstracted "arrival time" was either the same as or after a recorded ECG time represents 4.09% of the outpatient records submitted to CMS for measures for which "arrival time" was a data point.

LMH reported "arrival times" that were used to calculate CMS measure AMI-8A - - "primary percutaneous coronary intervention received within 90 minutes of hospital arrival." "Arrival time"

was either the same or after a recorded EKG time in 72.22 percent of the records LMH submitted to CMS for HVBP measure AMI-8a for FY 2015. The goal set out in AMI-8a was to administer a PCI (heart catheterization) within 90 minutes of arrival. No evidence has been presented to show that the LMH's allegedly false "arrival times" had a material impact upon whether the goal was met.

In fiscal years 2014, 2015, 2016 and 2017, LMH was not penalized for reporting inaccurate data to CMS and LMH received positive Value Based Purchasing adjustments based upon the data it provided.

B. DRA facts[1]

LMH has submitted attestation of compliance forms for multiple fiscal years. The forms attest to compliance with Section 6032 of the DRA. The forms state "as a condition for receiving payments exceeding $5 million per federal fiscal year," that the signees have read Section 6032 of the DRA and examined LMH's policies and procedures. The forms further state that LMH will comply with the provisions to remain eligible for payment under the Kansas Medicaid program and that LMH has complied with the requirements of the DRA to educate employees and contractors concerning, among other matters, the False Claims Act, state law pertaining to Medicaid fraud and abuse, administrative remedies

_____

[1] In this opinion, the court has considered the statement of facts contained in the parties' memoranda in support of and opposition to both LMH's motion for summary judgment and plaintiff's motion for partial summary judgment.

for false claims and statements, civil or criminal penalties for false claims and statements, and whistleblower protections under such laws. Copies of attestations for the fiscal years 2014, 2015, 2016 and 2017 have been submitted as exhibits.

Plaintiff has presented evidence that persons signed the attestations without first examining LMH's policies and procedures. Plaintiff has also presented evidence that LMH issued employee handbooks over several years which did not contain information required by DRA Section 6032. LMH has presented evidence of its Codes of Conduct, Compliance Plans, Compliance Handbooks, and on-line policy manuals over the years. There is a fact issue as to whether these sources satisfy the Section 6032 requirements for all the years in dispute in this case. These sources, however, provide some evidence that LMH publicized its commitment to deterring fraud and abuse, and provided education (sometimes quite general) regarding anti-fraud goals, remedies, and legislation.

III. FCA STANDARDS

"The FCA "covers all fraudulent attempts to cause the government to pay out sums of money.'" U.S. ex rel. Polukoff v. St. Mark's Hosp., 895 F.3d 730, 734 (10th Cir. 2018)(quoting U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008)(interior quotation omitted)). The statute is to be read broadly. Id. at 742.

Plaintiff brings this action under the FCA, specifically, subsections (A),(B) and (G) of 31 U.S.C. § 3729(a)(1). These subsections state that it violates the law to: (A) – knowingly present or cause to be presented, a false or fraudulent claim for payment or approval; (B) - knowingly make, use or cause to be made or used, a false record or statement material to a false or fraudulent claim; and (G) – knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money or property to the Government.

To prove a false claim under subsections (A) or (B), a plaintiff must show that defendant: (1) made a claim; (2) to the government; (3) that is materially false or fraudulent; (4) knowing of its falsity; and (5) seeking payment from the federal government. See U.S. v. The Boeing Company, 825 F.3d 1138, 1148 (10th Cir. 2016).

To prove a "reverse false claim" under FCA section 3729(a)(1)(G) a relator must show that: (1) the defendant knowingly made a materially false record or statement; (2) to improperly avoid or decrease an obligation to pay or transmit money or property to the government. See U.S. ex rel. Matheny v. Medco Health Solutions, Inc., 671 F.3d 1217, 1222 (11th Cir. 2012).

A "claim" is:

> (A) any request or demand . . . for money or property
> . . . that (i) is presented to an officer, employee,
> or agent of the United States; or (ii) is made to a
> contractor, grantee or other recipient, if the money
> or property is to be spent or used on the Government's
> behalf or to advance a Government program or interest,
> and if the United States Government – – (I) provides
> or has provided any portion of the money or property
> requested or demanded; or (II) will reimburse such
> contractor, grantee, or other recipient for any
> portion of the money or property which is requested or
> demanded . . ."

31 U.S.C. § 3729(b)(2).

False claims under the FCA may be either factually false or legally false. Boeing, 825 F.3d at 1148; U.S. ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1168 (10th Cir. 2010). A factually false claim involves the submission of an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided. Polukoff, 895 F.3d at 741; Boeing, 825 F.3d at 1148; Lemmon, 614 F.3d at 1168 (interior quotation omitted). A legally false claim is one which falsely certifies compliance with a regulation or contractual provision as a condition of payment. Polukoff, supra; Boeing, 825 F.3d at 1148; Lemmon, 614 F.3d at 1168. A legally false claim may be express or implied. Boeing, 825 F.3d at 1148. An express claim occurs upon a false certification of compliance with a term where compliance is a prerequisite to payment. Id. An implied claim occurs when the request for payment lacks an express certification,

12

but contains a knowing and false implication of entitlement to payment. Id.

"To give rise to liability under the FCA, the submitted claim must be both knowingly and materially false." Boeing, 825 F.3d at 1148. "'Liability [under the FCA] does not arise merely because a false statement is included within a claim'; rather, 'the false statement must be material to the government's decision to pay out moneys to the claimant.'" U.S. ex rel. Thomas v. Black & Veatch Special, 820 F.3d 1162, 1169 (10th Cir. 2016)(quoting Conner, 543 F.3d at 1219 & n.6).

Plaintiff mainly states that LMH made either express legally false claims or factually false claims.[2] Doc. No. 333, p. 46. LMH argues that plaintiff's claims are largely implied certification claims. Doc. No. 334, p. 56. The court does not believe the categorization of plaintiff's claims is important to defendant's materiality argument.

IV. PLAINTIFF'S CLAIMS

According to the pretrial order, plaintiff is making the following claims: 1) that, in violation of 31 U.S.C. § 3729(a)(1)(A), LMH submitted false claims to Medicare; 2) that, in violation of 31 U.S.C. § 3729(a)(1)(A), LMH submitted false claims to Medicaid; 3) that, in violation of 31 U.S.C. § 3729(a)(1)(B),

---

[2] Plaintiff states in a footnote, however, that the individual DRA claims might be seen as implied false certifications. Doc. No. 333, p. 42 n.9.

LMH submitted false records or statements to Medicare which constituted "false claims" and that these records or statements included but were not limited to "harvested patient records", Inpatient Quality Reports, Outpatient Quality Reports, and Data Accuracy and Completeness Acknowledgement certifications; 4) that, in violation of 31 U.S.C. § 3729(a)(1)(B), LMH submitted false records or statements to Medicaid which constituted "false claims", specifically attestations of compliance with Section 6032 of the DRA; 5) that, in violation of 31 U.S.C. § 3729(a)(1)(G), LMH concealed or improperly avoided an obligation to repay money received from Medicare through the Market Basket Update of Outpatient Quality Reporting.  Doc. No. 317, pp. 14-15.

These claims, as discussed in plaintiff's response to the summary judgment motion, concern two alleged underlying falsehoods: 1) that LMH submitted false information concerning patients' arrival times; and 2) that LMH falsely certified that it complied with the provisions of Section 6032 of the DRA.  Any claim relating to the general warranties of truth contained on individual claim forms[3] or on the DACA forms cannot describe a material falsehood if the underlying alleged falsehoods are immaterial.

---

[3] There is evidence that individual claim forms submitted by LMH contained language stating:

> Submission of this claim constitutes certification that the billing information as shown on the face hereof is true, accurate and complete.  That the submitter did not knowingly or recklessly disregard or misrepresent or conceal material facts.

V. DEFENDANT'S ARGUMENTS FOR SUMMARY JUDGMENT

Defendant's main argument for summary judgment is that plaintiff cannot prove a materially false claim for payment or a materially false statement or record in support of such a claim.[4] Doc. No. 323, p. 12. The same argument would apply to dispute whether defendant had an obligation to repay money it received from Medicare.

A. <u>Materiality standards</u>

"Material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court has counseled that the term must be given a rigorous and demanding construction in the context of the FCA. <u>Universal Health Servs., Inc. v. United States ex rel. Escobar</u>, 136 S. Ct. 1989, 2002-03 (2016)("<u>Escobar</u>").

"[M]ateriality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" <u>Id.</u>, 136 S.Ct. at 2002 (quoting Williston on Contracts § 69:12, p. 549 (4th ed. 2003)). The Court further stated in <u>Escobar</u>:

> The False Claims Act is not "an all-purpose antifraud statute," <u>Allison Engine</u>, 553 U.S., at 672, 128 S.Ct. 2123 or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A

---
[4] LMH also argues that plaintiff has not proven that false arrival times were reported. The court finds that plaintiff has presented sufficient evidence to create a jury issue on this point.

misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial. See United States ex rel. Marcus v. Hess, 317 U.S. 537, 543, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (contractors' misrepresentation that they satisfied a non-collusive bidding requirement for federal program contracts violated the False Claims Act because "[t]he government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive"); see also Junius Constr., 257 N.Y., at 400, 178 N.E., at 674 (an undisclosed fact was material because "[n]o one can say with reason that the plaintiff would have signed this contract if informed of the likelihood" of the undisclosed fact).

In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

Id. at 2003-04. "The fundamental inquiry is 'whether a piece of information is sufficiently important to influence the [government's] behavior . . .'" U.S. v. Coloplast Corp., 2018 WL

4029549 *6 (D.Mass. 8/17/2018)(quoting U.S. ex rel. Winkelman et al. v. CVS Caremark Corp., 827 F.3d 201, 211 (1st Cir. 2016)). Courts should conduct a holistic approach to determining materiality, but "[m]ateriality is 'more likely to be found where the information at issue goes "to the very essence of the bargain."'" Id., (quoting United States ex rel. Escobar v. Universal Health Servs., Inc., 842 F.3d 103, 109 (1st Cir. 2016)(citing Escobar, 136 S.Ct. at 2003 n.5)).

B. Arrival times

It is undisputed that "arrival time" is a component of certain measures used in the IQR and OQR programs and that there are numerous other measures for which arrival time is not a factor.

The court has reviewed the record citations presented by plaintiff. There is clear and substantial support for the general proposition that LMH's reimbursement is affected positively by submitting IQR and OQR reports. There is also clear and substantial support for the proposition that LMH's reimbursement from the Government can be positively or negatively affected under the HVBP program from statistical measurements using information supplied by LMH.[5] There is evidence that "arrival time" is a data

---

[5] The court relied upon these general propositions in part to deny LMH's materiality argument in LMH's first motion for summary judgment. Doc. No. 204, pp. 19-20. Also, at the time the court decided the first motion for summary judgment, discovery was not complete and plaintiff's claims were not as clear. A final pretrial order has been entered which helps clarify plaintiff's claims. Discovery is complete. Under these circumstances, the court has confidence in finding that plaintiff is unable to show evidence of materiality upon which a reasonable jury could find in plaintiff's favor.

point which can affect some of the measures used by the Government in the HVBP program. One such measure is labelled AMI-8a. This involves the time from arrival to heart catheterization. But, plaintiff has not presented evidence showing that LMH's alleged arrival time manipulations actually affected a reimbursement decision or reimbursement rate, or would likely have had an effect.[6]

Such evidence or allegations are critical. In <u>U.S. ex rel. McBride v. Halliburton Co.</u>, 848 F.3d 1027, 1033 (D.C. Cir. 2017), the court held that speculative statements that a false headcount "might" have led to an investigation or might have resulted in some charged costs being disallowed, was far too attenuated to satisfy the FCA's materiality standard. Also, in <u>U.S. ex rel. Nargol v. DePuy Orthopaedics, Inc.</u>, 865 F.3d 29, 36 (1st Cir. 2017) <u>cert. denied</u>, 138 S.Ct. 1551 (2018), the court affirmed the dismissal of a FCA claim involving the use and FDA approval of a medical device where the defendant allegedly told doctors that the device had a failure rate of 0.1% at five years, as opposed to a more modest 4% to 4.5% claimed in FDA filings. This claim that a

---

[6] Plaintiff's statement of fact # 92 (Doc. No. 333, p. 28) states that the amount of reimbursement upon every inpatient claim was increased because of the reported arrival times' impact upon the AMI-8A measure. But, the record citations do not adequately support plaintiff's claim. The witnesses either speak in generalities or do not specifically address reimbursement. Similarly, plaintiff's statement of fact # 95 (Doc. No. 333, p. 29) states that LMH received additional reimbursement of each Medicare claim because of its performance in the HVBP program. Plaintiff's citations, however, do not show that the alleged inaccurate arrival times had a material impact upon plaintiff's performance score.

design defect was misrepresented was dismissed because there was no allegation that the difference between 0.1% and 4%-4.5% was significant to doctors or the difference between being reimbursable by the government and not being reimbursable.[7]

The court does not question that the Government expects to receive accurate information from LMH. LMH expressly represents through the DACA forms and warranties made with claims for payments, that the information submitted is accurate and complete. LMH also impliedly represents that the information it submits for the Government is accurate. Several witnesses have testified as to this understanding. But, for plaintiff to establish a jury issue as to materiality, there must be some showing that the inaccuracy alleged as to arrival time is sufficiently critical that the Government modified or would likely have modified its reimbursement behavior on the basis of that information. Plaintiff has failed to present evidence that LMH's alleged submission of inaccurate arrival time data was material to a reimbursement decision, in other words, that it would not be considered by the Government as a minor or insubstantial matter as opposed to a material violation of LMH's duty to provide accurate and complete information.

---

[7] The court also <u>reversed</u> the dismissal of a FCA claim that defendant sold a defectively manufactured product to a provider that sought government reimbursement. 865 F.3d at 41.

The statutes and regulations cited by plaintiff are quite general in nature. Plaintiff cites 42 C.F.R. § 482.24 which requires LMH, as a condition of participation in Medicare, to maintain accurate medical records. This regulation, however, does not make perfect compliance a condition to receive payment and it does not directly concern the participation in or payment conditioned on the IQR, OQR or HVBP programs. A mandatory broadly-stated certification of compliance with laws and regulations was rejected as proof of materiality in Conner, 543 F.3d at 1218-22. The court believes the requirements of § 482.24 also fail to demonstrate the materiality of the alleged misrepresentations in this case.

Plaintiff also cites 42 U.S.C. §§ 1395ww(b), 1395l(t)(17) and 1395ww(o). These statutes authorize the IQR, OQR and HVBP programs. But, the general language set forth does not support a claim of materiality in the context of this case.

There is no indication in plaintiff's materials that the Government has refused to pay a claim or reduced compensation to a Medicare participant because of a similar inaccuracy. Moreover, LMH's reimbursements in past years from the Government appear not to have been affected by the Government's knowledge of plaintiff's allegations. This is some evidence against plaintiff's claim of materiality. See McBride, 848 F.3d at 1034; D'Agostino v. EV3, Inc., 845 F.3d 1, 7 (1st Cir. 2016).

In sum, while the provision of accurate and complete information from LMH is a real and logical expectation by the Government, the record indicates that plaintiff cannot prove that LMH's alleged misrepresentations as to measures involving arrival times are so important that they have affected or likely would affect the Government's reimbursement decisions.[8]

C. DRA claims

The DRA went into effect on January 1, 2007. The Act requires employee anti-fraud education methods as a condition of participation for entities that receive annual Medicaid payments of at least $5 million. LMH has received more than $5 million in Medicaid payments each year since 2007.

Section 6032 of the DRA, at 42 U.S.C. § 1396a(68), requires that a state Medicaid plan:

---

[8] In reaching this decision, the court does not rely upon LMH's arguments regarding the validation of LMH's abstracting process, the administrative remedies available to LMH if it wishes to challenge a reimbursement adjustment, or LMH's claim that the HVBP program does not impact the federal treasury. These arguments are not pertinent to the materiality analysis required in this case because they do not reach the question of whether the provision of inaccurate or incomplete information from LMH's medical records affected or likely would affect the Government's reimbursement actions. The court is not convinced that an audit of the abstracting process addressed the source of inaccuracy alleged by plaintiff. If LMH's argument is that the leeway granted in the auditing process (a 75% threshold) suggests that far less than perfect accuracy is required, the court is still unconvinced that LMH is not comparing apples and oranges. The court agrees with plaintiff that the possible administrative remedy for LMH if it wishes to contest a reimbursement adjustment is not germane to whether the alleged misrepresentations in this case were material to the Government. Finally, whether the U.S. Treasury is ultimately impacted is not relevant to the question of whether an alleged misrepresentation affected or would likely affect a reimbursement decision.

provide that any entity that receives or makes annual payments under the State plan of at least $5,000,000, as a condition of receiving such payments, shall--

(A) establish written policies for all employees of the entity (including management), and of any contractor or agent of the entity, that provide detailed information about the False Claims Act established under sections 3729 through 3733 of Title 31, administrative remedies for false claims and statements established under chapter 38 of Title 31, any State laws pertaining to civil or criminal penalties for false claims and statements, and whistleblower protections under such laws, with respect to the role of such laws in preventing and detecting fraud, waste, and abuse in Federal health care programs (as defined in section 1320a-7b(f) of this title);

(B) include as part of such written policies, detailed provisions regarding the entity's policies and procedures for detecting and preventing fraud, waste, and abuse; and

(C) include in any employee handbook for the entity, a specific discussion of the laws described in subparagraph (A), the rights of employees to be protected as whistleblowers, and the entity's policies and procedures for detecting and preventing fraud, waste, and abuse;

The Kansas Medicaid plan incorporates these requirements for service providers to Medicaid patients.

There is evidence in the summary judgment record which creates a jury issue as to whether LMH complied with the requirements that it inform its employees of the provisions of the FCA and the Kansas false claims statutes in the detail and manner mandated in Section 6032. The court finds, however, that plaintiff cannot show that LMH's compliance statements were material to a reimbursement decision by the Government.

Plaintiff relies upon: the statutory language of Section 6032; the language of the Kansas Medicaid plan which incorporates Section 6032's requirements; Answers to Frequently Asked Question sent by CMS to State Medicaid Directors; the Kansas Medical Assistance Program Fee-for-Service Manual (Doc. No. 323-19, p. 20); and the language of the attestations of compliance. All of these sources indicate that compliance with Section 6032 is a mandatory condition of receiving payments. The court concludes these sources, by and large, simply repeat the statutory commandment of Section 6032 and that this does not suffice to establish a jury issue as to materiality. As previously quoted, in Escobar the Court said clearly that "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." 136 S.Ct. at 2003. The Court expressly disagreed with the position that "any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation." Id. at 2004. Contrary to plaintiff's claim, a misrepresentation regarding the anti-fraud education given to LMH employees does not go to the essence of the bargain between LMH and the state and federal government for the

provision of medical services.[9] Nor has plaintiff shown that the Government's knowledge of plaintiff's claims, or of similar claims from other persons, has led to a change in the Government's reimbursement decisions. Upon the record presented, the court finds that plaintiff could not persuade a reasonable jury that LMH made a misrepresentation relating to Section 6032 of the DRA which was material to the Government's reimbursement actions.

VI. LMH'S COUNTERCLAIMS SHALL BE DISMISSED WITHOUT PREJUDICE.

The dismissal of plaintiff's federal claims opens the question of whether to dismiss LMH's counterclaims without prejudice pursuant to 28 U.S.C. § 1367(c). The court finds that it is unlikely that litigation in state court would cause a substantial increase in cost or inconvenience for the parties. There is also a strong argument that the counterclaims are permissive and lack an independent jurisdictional basis. See U.S. ex rel. O'Donnell v. America at Home Healthcare, 2018 WL 319319 *8 (N.D.Ill. 1/8/2018); Wilhelm v. TLC Lawn Care, 2008 WL 640733 *3 (D.Kan. 3/6/2008); Allen v. Leal, 27 F.Supp.2d 945, 949 (S.D.Tex. 1998); Chemtech Industries, Inc. v. Goldman Financial Group, Inc., 156 F.R.D. 181, 185 (E.D.Mo. 1994). Under these circumstances,

---

[9] In her reply brief, plaintiff cites U.S. v. Quicken Loans, Inc., 239 F.Supp.3d 1014 (E.D.Mich. 2017) in support of her materiality argument. The court finds that the alleged false statements about compliance with FHA requirements for mortgage insurance in Quicken Loans are considerably closer to the essence of the bargain between the defendant and the Government in that case, than the evidence presented by plaintiff for the summary judgment record in the case at bar.

the court shall dismiss LMH's counterclaims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995)(sustaining dismissal of supplemental state claims where pretrial proceedings had been completed); see also Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995)(describing dismissal of supplemental claims after pretrial dismissal of federal claims as the "most common response").

VII. CONCLUSION

For the above-stated reasons, LMH is entitled to summary judgment against plaintiff's claims under the FCA.  The motion at Doc. No. 322 is therefore granted.  For the same reasons, plaintiff's motion for partial summary judgment (Doc. No. 318) must be denied.  The court shall dismiss LMH's counterclaims without prejudice.  Finally, the court shall declare that plaintiff's motion for summary judgment at Doc. No. 320 is moot.

**IT IS SO ORDERED.**

Dated this 2nd day of October 2018, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge